OPINION
{¶ 1} Appellant Dorothy Gonda, Individually and as Administratrix of the Estate of David Paul Gonda, Deceased, appeals a judgment following jury trial in the Mahoning County Common Pleas Court in favor of appellees Juan Ruiz, M.D.; Abdul Hafiz, M.D.; Alan Cropp, M.D.; Pulmonary Medicine Consultants; and Pulmonary Rehabilitation Associates, on her complaint for medical negligence.
 ASSIGNMENTS OF ERROR {¶ 2} "I. THE TRIAL COURT ERRED AS A MATTER OF LAW IN FAILING TO GRANT PLAINTIFF'S MOTION FOR A NEW TRIAL ON THE ISSUE OF SURVIVABILITY AND DAMAGES ON THE CLAIM AGAINST DR. CROPP."
 {¶ 3} "II. THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE SINCE NO TESTIMONY WAS PRESENTED THAT DAVID GONDA WOULD HAVE SUFFERED IMMEDIATE DEATH WITH PROPER TREATMENT."
 {¶ 4} On May 19, 1995, David Gonda, a 27-year-old law student, began exhibiting symptoms of fever, coughing, and tachycardia, which is an abnormally fast heartbeat. He initially sought treatment at the Case Western Reserve Center. On June 27 and July 5, David Gonda sought treatment from appellee Ruiz, who diagnosed him with pharyngitis and laryngitis.
 {¶ 5} On July 13, 1995, appellee Cropp, a pulmonologist, first examined Gonda. Dr. Cropp conducted an examination of Gonda's lungs, which revealed nothing remarkable. He diagnosed Gonda with a sinus infection. When Dr. Cropp saw Gonda on July 15, Gonda showed signs of improvement, and he continued him on doxycycline.
 {¶ 6} On August 8, 1995, Gonda again saw Dr. Cropp. His temperature was elevated, and Dr. Cropp became concerned about the possibility of lymphoma, Hodgkin's Disease, or some other type of malignancy. He ordered a CT scan for August 15.
 {¶ 7} David Gonda was admitted to St. Elizabeth's Hospital on August 15, coughing up blood. He was transferred to the Cleveland Clinic, where he died on August 18. An autopsy disclosed that David Gonda died from pieces of a thrombus in his heart breaking off and traveling to his lungs. The autopsy further revealed that Gonda suffered from endomyocardial fibrosis, a filling in of one or both of the heart ventricles with fibrosis.
 {¶ 8} Appellant filed the instant medical malpractice action against appellees. The case proceeded to jury trial. The jury found in favor of appellees Ruiz and Hafiz. The jury found in favor of appellant against appellee Cropp, but found that the chance of survivability was 0%. The court accordingly entered judgment in favor of appellees and against appellant.
 {¶ 9} Appellant filed a motion for new trial against appellee Cropp on the issue of survivability and damages, which was overruled by the court.
 I. {¶ 10} In her first assignment of error, appellant argues that the court erred in overruling her motion for new trial against Dr. Cropp on the issues of survivability and damages.
 {¶ 11} Appellant first argues that the court erred in admitting the deposition testimony of Dr. Sharon Hook and Dr. Herbert Wiedemann, as their expert opinions were based on hearsay conversations with Dr. Norman Ratliff. Although Dr. Ratliff was deposed, his testimony was not presented at trial.
 {¶ 12} As to Dr. Wiedemann, the court granted appellant's motion to strike his testimony.
 {¶ 13} Dr. Sharon Hook was the staff pathologist involved with David Gonda's autopsy. She testified that because she was unfamiliar with the unusual disease affecting Gonda's heart, she consulted with Dr. Ratliff, who had extensive experience in cardiac pathology. She testified that while she had not seen cases of endomyocardial fibrosis, Dr. Ratliff had seen such cases. She testified that she had read other literature on the disease and was firmly convinced that was the cause of death.
 {¶ 14} It is perfectly proper for an expert to rely on facts or data perceived by him, as well as to draw upon the knowledge gained from other experts in the field, whether this knowledge was communicated orally or in writing. Deagan v. Dietz (Mar. 29, 1996), 7th Dist. No. 94-CA-75. This information forms the scientific, technical, or other specialized knowledge which qualifies the witness as an expert. Id.
 {¶ 15} Dr. Hook was the attending physician who performed the autopsy and signed the report. Her expert opinion on cause of death was based on personal examination of the body, consultation with Dr. Ratliff, and literature on the particular disorder which caused Gonda's death. The court did not err in admitting her testimony.
 {¶ 16} Appellant argues that he was prejudiced by the failure of the defense to call Dr. Ratliff to testify, as she had been led to believe by counsel for appellee Ruiz that Ratliff would testify at trial. However, the motion for new trial and assignment of error on appeal is directed at appellee Cropp, who had nothing to do with representations regarding Ruiz's intent to call Ratliff as his expert witness. Further, after becoming aware that Ratliff would not be called to testify, appellant took no action to call Dr. Ratliff as a witness in rebuttal or have his deposition admitted into evidence.
 {¶ 17} Appellant next argues that the opinions of Dr. Hook and Dr. Wiedemann concerning survivability were not based on a reasonable degree of medical certainty.
 {¶ 18} As discussed above, the issues of Dr. Wiedemann's testimony is not properly raised on appeal, as the court struck his testimony and instructed the jury to disregard it.
 {¶ 19} As to Dr. Hook's testimony, after testifying as to her opinions regarding cause of death and survivability, she was asked if all of her opinions were expressed to a reasonable degree of medical certainty, and she responded, "Yes." Tr. VI, p. 1353. Appellant's argument is without merit.
 {¶ 20} Appellant next argues that Dr. Hook, Dr. Wiedemann, and Dr. Zatuchni were not qualified to render expert opinions on the issue of survivability.
 {¶ 21} As discussed earlier, Dr. Wiedemann's testimony was struck by the court, and appellant therefore cannot claim error regarding his testimony.
 {¶ 22} As to Dr. Hook, appellant argues that she was not qualified to render an expert opinion on endomyocardial fibrosis. She argues that Dr. Zatuchni was a cardiologist but not a surgeon, and therefore not qualified to render an opinion regarding the likelihood of survivability following surgery.
 {¶ 23} The determination of competency of an expert witness lies within the sound discretion of the trial court. Wells v. Miami ValleyHospital (1993), 90 Ohio App.3d 840, 855. Differences in area of specialization go to the weight of the evidence, as the test of admissibility is whether a witness offered as an expert will aid the trier of fact in the search for truth, not whether the expert witness is the best witness on the subject. Id.
 {¶ 24} The court did not abuse its discretion in allowing these witnesses to testify as experts. Dr. Hook is a licensed physician, and the staff pathologist who conducted the autopsy in the instant case. Dr. Zatuchni is a cardiologist who sees 20 to 30 patients a day, and has written over 150 articles on cardiology. Appellant's arguments go to the weight to be given the testimony, not to its admissibility.
 {¶ 25} The first assignment of error is overruled.
 II. {¶ 26} Appellant argues that the jury's finding of a 0% chance of survival even if Dr. Cropp had met the standard of care is against the manifest weight of the evidence.
 {¶ 27} A judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as against the weight of the evidence. C.E. Morris Co.v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 28} Appellant presented a survival chart, reflecting that even with severe endomyocardial fibrosis, there is a 50% chance of survival three years after diagnosis with proper medical treatment. However, Dr. Zatuchni testified that regardless of the care Gonda received, he would have died. Dr. Hook also testified that while the disease is rare, once a person gets it, they will die. Appellant's own expert, Dr. Botham, testified that there is no cure for the disease. The jury's finding of 0% chance of survival was not against the manifest weight of the evidence.
 {¶ 29} The second assignment of error is overruled.
 {¶ 30} The judgment of the Mahoning County Common Pleas Court is affirmed.
Judgment affirmed.
Donofrio, J., and Vukovich, J., concur.